Stephen G. BUTCHER, Randy Meicher and Anthony
F. Coffaro, on behalf of themselves and the class
they represent, Plaintiffs-Appellants,†

v.

AMERITECH CORPORATION, a foreign corporation,
Michael Morgan as Secretary of the
Wisconsin Department of Revenue and
Wisconsin Bell, Inc., a Wisconsin corporation,
Defendants-Respondents.

Court of Appeals

*No. 2005AP2355. Oral argument September 20, 2006.
—Decided December 21, 2006.*

2007 WI App 5

(Also reported in 727 N.W.2d 546.)

† Petition to review filed.

469

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert L. Gegios, William E.*

*Fischer, Alexander T. Pendleton* of *Kohner, Mann & Kailas, S.C.*, Milwaukee; *Jeffrey W. Purnell*, Milwaukee; *Dennis L. Fisher, Thomas J. Nichols, Thomas M. Hruz* of *Meissner Tierney, Fischer & Nichols S.C.*, Milwaukee. There was oral argument by *Robert L. Gegios*.

On behalf of the defendants-respondents, Ameritech Corporation and Wisconsin Bell, Inc., the cause was submitted on the brief of *Don M. Millis* and *Jordan J. Hemaidan* of *Michael Best & Friedrich LLP*, Madison, and *Leslie M. Smith, P.C.* and *Todd F. Maynes, P.C.* of *Kirkland & Ellis LLP*, Chicago, Illinois. There was oral argument by *Leslie M. Smith*.

On behalf of the defendant-respondent, *Michael Morgan*, the cause was submitted on the brief of *F. Thomas Creeron III*, asst. attorney general, *Paul L. Barnett*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Paul L. Barnett*.

A nonparty brief was filed by *Terrence M. Polich* of *Clifford & Raihala, SC*, Madison, for the Citizens Utility Board, Inc.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. Stephen Butcher, Randy Meicher, and Anthony Coffaro, on behalf of themselves and all others similarly situated, filed this action alleging that Ameritech Corporation collected sales tax from them on services that are not telecommunication services and therefore not subject to tax under WIS. STAT. §§ 77.52(2)(a)5. and 77.51(21m).[1] They appeal the cir-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

cuit court's orders dismissing their complaint on three primary grounds.[2]

¶ 2.   First, the plaintiffs contend that the circuit court erred in dismissing their claims for monetary relief because of the voluntary payment doctrine. That doctrine "places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make a challenge either before voluntarily making the payment, or at the time of making the payment." *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶ 13, 255 Wis. 2d 447, 649 N.W.2d 626. We conclude the circuit court correctly determined that, based on the allegations of the amended complaint, the voluntary payment doctrine applied and the exceptions for fraud, duress, and mistake of fact were not applicable.

¶ 3.   Second, the plaintiffs contend the circuit court erroneously exercised its discretion in denying their motion to amend their complaint after it dismissed their claims for monetary relief under the voluntary payment doctrine. We conclude the plaintiffs have not shown that the court erroneously exercised its discretion because there is no transcript of the hearing and the plaintiffs did not file a proposed second amended complaint.

¶ 4.   Third, the plaintiffs contend the circuit court erroneously exercised its discretion in dismissing the remaining claims for declaratory and injunctive relief on the ground of primary jurisdiction. We conclude the circuit court properly exercised its discretion.

---

[2] In addition to the parties' briefs, the Citizens Utility Board, Inc. submitted an amicus curiae brief seeking to reverse the circuit court's decision.

¶ 5. Accordingly, we affirm the circuit court's orders dismissing the claims for monetary relief, denying the motion to amend, and dismissing the amended complaint.

## BACKGROUND

¶ 6. The amended complaint alleges that Ameritech, a retailer of telecommunications products in Wisconsin, has been collecting sales taxes from its Wisconsin customers on services that are not subject to taxation because the services do not come within the definition of "telecommunications services" as defined in WIS. STAT. § 77.51(21m).[3] On behalf of the class of Ameritech customers who have paid the allegedly unauthorized taxes, the complaint seeks monetary and injunctive relief for claims of breach of contract, money had and received, unjust enrichment, and violation of the tax statute and the Wisconsin Constitution. The

---

[3] WISCONSIN STAT. § 77.52(2)(a)5. imposes on retailers a five percent sales tax on "telecommunication services that either originate or terminate in this state . . . ." WISCONSIN STAT. § 77.51(21m) defines "telecommunication services" as

> **(21m)** "Telecommunications services" means sending messages and information transmitted through the use of local, toll and wide-area telephone service; channel services; telegraph services; teletypewriter; computer exchange services; cellular mobile telecommunications service; specialized mobile radio; stationary two-way radio; paging service; or any other form of mobile and portable one-way or two-way communications; or any other transmission of messages or information by electronic or similar means between or among points by wire, cable, fiber optics, laser, microwave, radio, satellite or similar facilities. "Telecommunications services" does not include sending collect telecommunications that are received outside of the state.

The retailer may collect the tax from the consumer. Section 77.52(3).

amended complaint also names the secretary of the Wisconsin Department of Revenue (DOR) as a defendant because, the complaint asserts, DOR may have an interest in the litigation.[4]

¶ 7.  Ameritech and DOR both moved to dismiss the complaint, arguing failure to state a claim and failure to exhaust administrative remedies; Ameritech also argued that the case should be dismissed based on the doctrine of primary jurisdiction. The circuit court denied the motions, discussing and rejecting the exhaustion argument but not explicitly referring to the primary jurisdiction argument. We discuss the parties' differing characterizations of this ruling *infra* in paragraph 44 of this opinion.

¶ 8.  Ameritech filed another motion to dismiss, providing additional arguments for its position that the complaint did not state any claim on which relief could be granted. Ameritech also argued in this motion that all claims were barred by the voluntary payment doctrine. The circuit court denied the motion as to all claims except the quantum meruit claim, which it ordered dismissed. The court concluded that the voluntary payment doctrine was inapplicable because it did not apply if there was a mistake of fact and the plaintiffs here may have paid the disputed tax because of a mistake of fact.

¶ 9.  After the circuit court made this decision, the supreme court decided *Putnam*, 255 Wis. 2d 447, which addressed the voluntary payment doctrine. On

---

[4] Plaintiffs initially filed their complaint in Milwaukee County, but on DOR's motion venue was changed to Dane County. The amended complaint added Wisconsin Bell, Inc. as a defendant, alleging that it is a subsidiary of Ameritech. We use "Ameritech" to refer to both these defendants. The plaintiff class was subsequently certified.

Ameritech's motion for reconsideration in light of *Putnam*, the circuit court concluded that the voluntary payment doctrine did apply and dismissed all the claims for monetary relief. The court stated that under *Putnam* there was no basis for construing the pleadings to allege that the payments made to Ameritech were based on a mistake of fact. While recognizing that under *Putnam*, 255 Wis. 2d 447, ¶ 13 (citation omitted), the voluntary payment doctrine does not apply if there is "fraud or wrongful conduct inducing payment," the court found nothing in the pleadings alleging that the payments were induced by fraud or made under duress.

¶ 10. A few days after this ruling, the plaintiffs filed an "Emergency Motion for Clarification" of the ruling in which they requested permission to amend their complaint to allege "duress, mistake and/or fraud." A "minute sheet" in the record shows that there was a hearing on this motion, at which the court denied the motion.

¶ 11. The litigation proceeded, with another judge presiding. In the spring of 2005, all parties moved for summary judgment on the issue whether the statute authorized a sales tax on the contested services. In addition, DOR and Ameritech renewed the argument for dismissal based on the doctrine of primary jurisdiction. The circuit court concluded that, with the claims for monetary relief dismissed from the case, the doctrine of primary jurisdiction warranted dismissal of the remaining claims because they could be fully disposed of through administrative action. The court therefore granted Ameritech's motion to dismiss under the primary jurisdiction doctrine, concluding that there were no remaining issues for the court to decide.

## DISCUSSION

### I. Voluntary Payment Doctrine

¶ 12. The plaintiffs contend the circuit court erred on four grounds when it dismissed their claims for monetary relief because of the voluntary payment doctrine: (1) the complaint itself constitutes the notice required by the doctrine; (2) it is improper to dismiss claims under the voluntary payment doctrine based on the facts alleged in their amended complaint because they are not required to " 'plead around' possible affirmative defenses"; (3) the amended complaint alleges facts that come within the doctrine's exceptions for duress and mistake of fact; and (4) applying the doctrine in this case is inequitable and violates public policy as expressed in WIS. STAT. § 77.59(4).

¶ 13. Whether the circuit court correctly applied the voluntary payment doctrine to the allegations in the complaint presents a question of law, which we review de novo. *See Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999).

¶ 14. We start with a discussion of *Putnam*, because that case is central to a resolution of the plaintiffs' challenges to the circuit court's application of the voluntary payment doctrine. The *Putnam* complaint, filed on behalf of a putative class of Time Warner customers, alleged that Time Warner imposed a five-dollar fee on customers who failed to pay their monthly cable bills on time and this constituted unlawful liquidated damages; the plaintiffs sought recovery of a portion of the late fees paid, as well as monetary and injunctive relief. *Putnam*, 255 Wis. 2d 447, ¶¶ 4, 5. There was no allegation that the plaintiffs had objected

to the late fee before or when paying it. *Id.*, ¶ 5–7. Based on the allegations in the complaint, the circuit court and this court decided that the voluntary payment doctrine precluded recovery of any portion of the late fees already paid, and the supreme court affirmed. *Id.*, ¶¶ 7–8, 53.

¶ 15. The supreme court described the voluntary payment doctrine as "plac[ing] upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." *Id.*, ¶ 13. There are three recognized exceptions: fraud, duress, and mistake of fact. *Id.*, ¶ 36. The court explained the two primary reasons courts have adopted this doctrine: it "allows entities that receive payment for services to rely upon these funds and to use them unfettered in future activities" and it "operates as a means to settle disputes without litigation by requiring the party contesting the payment to notify the payee of its concerns." *Id.*, ¶ 16 (citation omitted).

¶ 16. The supreme court rejected the plaintiffs' arguments that the voluntary payment doctrine should not apply to them because they paid the five-dollar late fee without knowing that Time Warner's actual costs from a late payment were between $0.38 and $0.48 and because Time Warner concealed material information regarding its late payment costs. *Id.*, ¶ 18. The court held that the first ground was not a mistake of fact, but was a mistake of law. *Id.*, ¶ 19. It held that the second ground did not constitute fraud, noting that the complaint did not allege fraud with the particularity required by Wis. Stat. § 802.03(2).[5] *Id.*, ¶¶ 19–20.

---

[5] Wisconsin Stat. § 802.03(2) provides:

¶ 17. The supreme court in *Putnam* considered whether it should create another exception to the voluntary payment doctrine whereby a private entity that engages in wrongful conduct "may not avail itself of the . . . doctrine to block claims derived from the wrongful conduct," or create a narrower exception for unlawful liquidated damages. *Id.*, ¶ 22. The court declined to do so. It noted that both fraud and mistake of fact must be pleaded with particularity under WIS. STAT. § 802.03(2), *id.*, ¶ 26, and that fraud, duress, and mistake of fact each "work to negate the true voluntariness of payments," which is not true of unlawful liquidated damages. *Id.*, ¶ 29. The court also concluded that the rationale for the doctrine—that the party receiving payment from another without protest should be able to rely on the use of the funds without risking a subsequent demand for return of the payment—applied to private businesses like Time Warner, not just to governmental agencies. *Id.*, ¶¶ 30–34.

■

¶ 18. Turning now to the plaintiffs' arguments in this case, *Putnam* plainly resolves against them the argument that the complaint itself constitutes the notice of their challenge required by the doctrine: the challenge must be made "either before voluntarily making payment, or at the time of voluntarily making payment." *Id.*, ¶ 13. That did not occur here.

---

(2) FRAUD, MISTAKE AND CONDITION OF MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The plaintiffs in *Putnam v. Time Warner Cable of Southeastern Wisconsin*, 2002 WI 108, ¶ 18 n.5, 255 Wis. 2d 447, 649 N.W.2d 626, did not argue before the supreme court that there was duress.

¶ 19. *Putnam* also resolves against the plaintiffs the argument that the circuit court erred in applying the doctrine at the pleading stage. The supreme court in *Putnam*, like both courts below it, analyzed the allegations of the complaint to determine whether it alleged either that the requisite protest had been made before or with the payment or alleged facts that showed one of the exceptions applied. *Id.*, ¶¶ 7, 8, 20. Indeed, the supreme court concluded its decision on the voluntary payment doctrine with this statement: "In sum, the voluntary payment doctrine bars recovery of bills or fees previously paid without protest, *absent properly pled allegations of fraud, duress, or mistake of fact.* None of these exceptions was properly alleged against Time Warner . . . ." *Id.*, ¶ 36 (emphasis added). The cases plaintiffs rely on do not concern the voluntary payment doctrine and thus do not provide authority for their position in light of *Putnam*.[6]

¶ 20. Under *Putnam*, then, we decide whether the exceptions of duress and mistake of fact apply by analyzing the allegations of the amended complaint. We take as true all the allegations in the amended complaint and draw all reasonable inferences from them in the plaintiffs' favor. *Id.*, ¶ 11.[7]

---

[6] The plaintiffs cite *Poeske v. Estreen*, 55 Wis. 2d 238, 245, 198 N.W.2d 625 (1972) (where answer raised statute of limitations defense, it was neither possible nor necessary for the plaintiff to plead the defense of equitable estoppel in reply); and *Thomas v. Kells*, 53 Wis. 2d 141, 145–48, 191 N.W.2d 872 (1971) (because third party complaint did not concede or create the affirmative defense of parental immunity, dismissal at demurrer stage was improper).

[7] Because our analysis is confined to the amended complaint, we do not address the plaintiffs' argument that with

¶ 21. There are no allegations in the amended complaint and no reasonable inferences from them that the plaintiffs paid the allegedly unauthorized taxes because of duress. Duress has four elements: wrongful or unlawful action of another, that deprives the party of unfettered will, and compels the party to disproportionately exchange or waive something for nothing, and there is no legal remedy. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 109–10, 293 N.W.2d 155 (1980) (citations omitted). The amended complaint alleges that Ameritech has "improperly" collected the unauthorized taxes and that the plaintiffs paid them, but there are no other allegations or reasonable inferences concerning Ameritech's conduct toward the plaintiffs or the plaintiffs' reasons for paying the allegedly unauthorized taxes. Thus, although the amended complaint adequately alleges the first element of duress, there are no allegations or reasonable inferences from the allegations regarding the second, third, and fourth elements.

¶ 22. The plaintiffs rely on three Illinois cases to argue that the duress exception applies because of the necessity of basic telephone services: *Getto v. City of Chicago*, 426 N.E.2d 844 (Ill. 1981); *Russell v. Hertz Corp.*, 487 N.E.2d 630 (Ill. App. 1985); and *Dreyfus v. Ameritech Mobile Comm., Inc.*, 700 N.E.2d 162 (Ill. App. 1998). However, none of these cases support a duress exception based on the allegations of the amended complaint in this case. Only in *Getto*, 426 N.E.2d at

discovery they might be able to establish fraud because discovery might show that Ameritech "recklessly or deliberately kept material facts out of its customers' hands . . . ."

846–48, did the court decide there was duress, and that was because the court determined there was an "implicit and real threat that phone service would be shut off for nonpayment of charges." *Id.* at 850. In *Russell*, 487 N.E.2d 630, the court held there was no duress because people paying taxes on rental cars were not faced with the deprivation of an essential services. *Id.* at 635–36. In *Dreyfus*, 700 N.E.2d at 167, the court held that cellular phone service was not purchased under duress because it was not a necessity in that there were reasonable alternatives to cellular phone service.

¶ 23.   More importantly, to the extent *Getto* may suggest that duress is automatically inferred when the payment relates to basic telephone service, we decline to adopt such a rule. The supreme court in *Putnam*, 255 Wis. 2d 447, ¶¶ 28–29, declined to adopt exceptions beyond fraud, duress, or mistake of fact, and it specifically referred to the elements of duress. The supreme court, not this court, is the proper court to decide if the services involved in this case, in themselves, warrant an exception to the voluntary payment doctrine.

██

¶ 24.   With respect to the mistake of fact exception, the plaintiffs argue that it applies because the plaintiffs' bills attached to the amended complaint show that Ameritech did not inform them what services it was collecting a sales tax on. The bills itemize each service provided and the corresponding charge. They also state the amount of taxes on the total of all services, breaking the taxes down to federal, state, county, and stadium, with the tax rate and the total taxes for each. However, as the plaintiffs point out, the bills do not indicate whether each service is or is not being taxed. Without that information, the plaintiffs contend, and without being informed by Ameritech that

it was collecting sales tax on non-taxable items, they were not on notice of the operative facts and therefore they should not be "blamed" for paying the assessed amount.

¶ 25. We conclude that substantially the same argument was rejected by the supreme court in *Putnam*. In response to the plaintiffs' argument that they did not know that the actual cost of a late payment to Time Warner was only $0.38 to $0.48 and this was a mistake of fact, the court said:

> [T]he customers possessed full knowledge of the $5.00 late fee and of the circumstances under which they would be exposed to it. . . . Although they failed to exercise any diligence to inquire into or contest the cost-accounting basis of Time Warner's late-payment fee, the customers now assert that Time-Warner impermissibly concealed and omitted information related to the basis of the fee amount.

*Id.*, ¶ 19 (citation omitted). The court noted that a mistake of fact "goes to the 'unconscious ignorance or forgetfulness of . . . a fact . . . material to the contract." *Id.*, ¶ 19 n.6 (citation omitted). It concluded that the "failure to know the precise factors underlying Time Warner's decision to charge a $5.00 late fee cannot be held to be a mistake of fact as a basis for the payment made . . . ." *Id.*, ¶ 20.

¶ 26. In this case, the bills show the charges for the services and the state tax computed at five percent on those services. *If* a customer knew what services were subject to a state tax, the customer could figure out whether the amount of tax being collected by Ameritech was more than that amount. As the *Putnam* court explained, every person is presumed to know the law and that is why a mistake of law is not an exception to the voluntary payment doctrine. *Id.*, ¶ 13 n.4.

¶ 27. We recognize that knowledge of the law on what services are taxable might not, in some cases, enable a customer to figure out from the bill exactly what services are being taxed but only whether he or she is being taxed more than the law permits. However, even if we assume that knowledge of which particular services are being taxed is necessary in order for a customer to decide whether to protest the tax when paying it, we conclude that, under *Putnam*, it is the obligation of the customer to make that inquiry. We read *Putnam* to say that it is not a mistake of fact when a customer pays the amount charged without having factual information from the company that would show the customer that the amount charged is unlawful, at least where the customer has made no inquiry to obtain the additional information. The plaintiffs' argument that this is an unreasonable rule is exactly the point made by Justice Bablitch in dissent, *see id.*, ¶¶ 54–68 (Bablitch, J., concurring in part, dissenting in part), and implicitly rejected by the majority.

¶ 28. We do not agree with the plaintiffs that the facts of this case are like those in *State ex rel. Pabst Brewing Co. v. Kotecki*, 163 Wis. 101, 157 N.W. 559 (1916). In *Pabst Brewing*, the taxpayer provided the assessor the information on his personal property and then examined the tax rolls and saw those items were listed. *Id.* at 101. The assessor subsequently decided that two of the items should be listed in different classifications but mistakenly did not remove them from the original classification, with the result that the items were taxed twice. *Id.* at 102. The taxpayer, not knowing of the clerical error, paid the tax. *Id.* When the error was discovered, the plaintiff taxpayer filed a claim for a refund with the common council under a statute that authorized this procedure. *Id.* The court rejected

the city's argument that the taxpayer had paid the tax voluntarily, stating that "the payment of this amount was the result of a mistake of fact due to an error committed by the city officers . . . ." *Id.* at 104. Although the voluntary payment doctrine was not referred to, the court's reasoning that a mistake of fact meant the payment was not voluntary is consistent with the voluntary payment doctrine. The facts here are not like *Kotecki*: payment of the allegedly unauthorized tax here was not due to a clerical error made by Ameritech after the plaintiffs had ascertained they were being correctly taxed on certain items.

¶ 29. In summary, we read *Putnam* to compel the conclusion that customers in the plaintiffs' situation, once they have the information appearing on the Ameritech bills, are presumed to know the law and are responsible for making additional inquiries if they want more information on which of the itemized services have been subject to the state five percent tax. If they do not do so and pay the tax charged without objecting before or at the time of payment, the lack of additional information is not a mistake of fact for purposes of that exception to the voluntary payment doctrine. We therefore conclude the amended complaint, including the attached bills, does not contain allegations of facts, including reasonable inferences from those facts, that the plaintiffs paid the unauthorized taxes because of a mistake of fact.[8]

---

[8] The plaintiffs discuss *Getto v. City of Chicago*, 426 N.E.2d 844 (Ill. 1981), one of the Illinois cases we referred to *supra* in paragraph 22, as well as cases from other jurisdictions in support of their position that the mistake of fact exception applies. We do not discuss these because we conclude *Putnam*, 255 Wis. 2d 447, is dispositive.

¶ 30. Finally, we address the plaintiffs' argument that applying the doctrine in this case violates public policy as expressed in WIS. STAT. § 77.59(4) and is inequitable.

¶ 31. WISCONSIN STAT. § 77.59(4)(a) authorizes a taxpayer to file with DOR a claim for a refund for taxes paid to the seller if the claim is for at least fifty dollars. Plaintiffs point out that this section does not include a protest requirement and they argue that this shows the legislature intended that the voluntary payment doctrine not apply to actions such as this to recover from the seller.[9] We do not agree. Section 77.59(4)(a) ex-

---

[9] The plaintiffs cite and partially quote *Interstate Department Stores, Inc. v. Henry*, 224 Wis. 394, 397, 272 N.W. 451 (1937), for the proposition that "[a] tax paid voluntarily without protest may nevertheless be 'recovered . . . under a statute which operates regardless of whether the payment is voluntarily or compulsory.'" The statute in *Interstate* provided that an aggrieved taxpayer could sue the state treasurer in an action at law to recover an invalid tax if the taxpayer had paid the tax when due and "paid under protest"; the issue was whether the taxpayer had paid under protest. *Id.* at 396 (citations omitted). The complete sentence the plaintiffs quote from *Interstate* and the three preceding ones are:

> It has been held that a statutory method of this sort for preserving the right to recover an invalid tax once paid is not exclusive of the common-law right to recover where it is paid under compulsion. Even under this view, plaintiff may not sustain his action. A payment is not necessarily made under compulsion because made unwillingly. All tax payments are presumed to be voluntary until the contrary is made to appear, and it is settled that if the payment of a tax is a voluntary payment, it cannot be recovered except under a statute which operates regardless of whether the payment is voluntary or compulsory.

*Id.* at 396–97 (citations omitted). Although WIS. STAT. § 77.59(4)(a) does not contain a protest requirement, *Interstate*

presses the legislature's intent that a taxpayer need not protest the tax when paying it in order to recover a refund under the procedure established in § 77.59(4)(a). The statute expresses no intent and no policy judgment on whether the common law voluntary payment doctrine should apply in a court action outside the statutory scheme.

¶ 32.   The plaintiffs also argue that "a balancing of the equities" in this case requires that the voluntary payment doctrine not apply. The plaintiffs assert that it is unrealistic to require taxpayers to know all the sales tax laws and to analyze every one of their many daily transactions involving sales taxes to determine if they were correctly computed. In a similar vein, the amicus Citizens Utility Board argues that applying *Putnam* to sales taxes in general and to utility services in particular is detrimental to consumers. We recognize the merit in this argument, but whether it should result in an exception to the voluntary payment doctrine, given the principles underlying the doctrine, is a policy judgment that should be addressed to the supreme court. We are bound by *Putnam*, and we see no basis in that case, or any other Wisconsin case cited by the plaintiffs, that would support the creation of such an exception by this court.

II.   Amendment to Amended Complaint

¶ 33.   The plaintiffs contend the circuit court erred in denying their motion to amend the amended

does not suggest that the lack of such a requirement in the statutory refund scheme means that the voluntary payment doctrine does not apply if the taxpayer seeks to recover from the seller outside the statutory scheme. Indeed, the *Interstate* court's statement on the common law indicates just the opposite.

complaint after the court ruled against it on the voluntary payment doctrine. According to the plaintiffs, the circuit court denied the motion without explaining its reasoning, and both the lack of reasoning and the denial itself is an erroneous exercise of the court's discretion.

¶ 34. Whether to allow an amendment to a complaint when the party does not have a right to amend under Wis. Stat. § 802.09(1)[10] is a matter within the discretion of the circuit court. *Mach v. Allison*, 2003 WI App 11, ¶ 20, 259 Wis. 2d 686, 656 N.W.2d 766. We affirm a circuit court's discretionary decision if it applies the correct legal standard to the facts of record in a reasonable manner. *Id.*

¶ 35. We conclude for two reasons that the plaintiffs have not established that the circuit court erroneously exercised its discretion. First, as the appellants, it is the plaintiffs' responsibility to provide us with a record that is sufficient to review the issue they raise, *see J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n*, 114 Wis. 2d 69, 85, 336 N.W. 2d 679 (Ct. App. 1983), and the record here is not sufficient. There is no transcript of the hearing on the motion in the record and no written decision explaining the court's reasoning. The "minute sheet" for the hearing recounts only that the court denied it, without stating the reason. Because it is the

---

[10] Wisconsin Stat. § 802.09(1) provides:

(1) Amendments. A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires . . . .

plaintiffs' responsibility here to provide us with a record adequate for review, in the absence of a transcript we presume that every fact essential to sustain the circuit court's decision is supported by the record. *See Streff v. Town of Delafield*, 190 Wis. 2d 348, 353 n.2, 526 N.W.2d 822 (Ct. App. 1994).

¶ 36. Second, plaintiffs did not file a proposed seconded amended complaint. They simply asked in their "Emergency Motion for Clarification" for permission to amend their complaint to allege "duress, mistake and/or fraud." A proposed amended complaint is necessary for the court to evaluate whether the particular amendment should be permitted. This is so because among appropriate factors to consider in deciding whether to deny a motion to amend a complaint is whether the amended complaint would withstand a motion to dismiss, and a circuit court may properly deny the motion if it would not. *See Habermehl Elec., Inc. v. DOT*, 2003 WI App 39, ¶ 31, 260 Wis. 2d 466, 659 N.W.2d 463. The plaintiffs' motion here is wholly inadequate to permit the circuit court to decide whether the second amended complaint would satisfy the strict pleading requirements of Wis. Stat. § 802.03(2) for fraud and mistake of fact or would adequately allege the elements for duress.[11]

III. Primary Jurisdiction

¶ 37. The plaintiffs contend the circuit court erred in dismissing the amended complaint based on

---

[11] The minute sheet shows that one of the arguments in opposition to the plaintiffs' motion was that there was no proposed amended pleading and the plaintiffs were seeking an advisory opinion.

the doctrine of primary jurisdiction for these reasons: the issue involved is a question of law that requires no expertise from DOR; the ruling contradicts a previous ruling; it is unfair to dismiss the case at this late stage; and it is unfair to deprive the plaintiffs of the class action vehicle.

¶ 38. Under the primary jurisdiction doctrine, when an administrative agency and the circuit court both have jurisdiction over an issue, the circuit court has the discretion to defer to the agency to resolve the issue. *Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 420, 491 N.W.2d 484 (1992). The doctrine is based on the principle that "[a]dministrative agencies are designed to provide uniformity and consistency in the fields of their specialized knowledge [and] [w]hen an issue falls squarely in the very area for which the agency was created, it is sensible to require prior administrative recourse before a court decides the issue." *Id.* at 421. Courts are to exercise their discretion "with the understanding that the legislature created the agency in order to afford a systematic method of fact finding and policymaking and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention." *Id.*

¶ 39. The circuit court here assumed without deciding that it had jurisdiction and concluded that the issues raised by the plaintiffs implicated the expertise and policy making roles of DOR and the Tax Appeals Commission and that the plaintiffs had administrative remedies available to them to resolve the issues. The court noted that the plaintiffs can file a petition with the appropriate agency for a declaratory ruling on the legal issue of what services are taxable and obtain judicial review if the ruling is unfavorable. *See* WIS.

STAT. § 227.41(1). In that proceeding, they can join Ameritech as a party so the ruling will be binding on it. *See id.* The plaintiffs can also file claims for refunds under WIS. STAT. § 77.59(4) with judicial review if the agency decision is adverse. The circuit court acknowledged that the refund procedure is available only for those plaintiffs with claims over fifty dollars, but it stated that all class members would benefit prospectively from a favorable ruling in a particular case. The court also pointed out that, whatever the limitations on obtaining refunds under § 77.59(4), the ruling on the voluntary payment doctrine means that no refunds could be obtained in a court action.

¶ 40. The court expressed its awareness of the length of time the case had been pending and the time expended by the plaintiffs, and it acknowledged that use of an administrative procedure would involve more delay in obtaining a ruling. However, the court concluded, it would be abusing its discretion if it did not recognize that the law accorded DOR and the Tax Commission the authority in the first instance to decide the remaining issues in the case.

¶ 41. We conclude the circuit court properly exercised its discretion in applying the primary jurisdiction doctrine. The issues remaining in this case involve the construction of WIS. STAT. § 77.51(21m), which defines "telecommunications services," and applying the construction to the services the plaintiffs allege do not come within the definition but are nonetheless taxed by Ameritech. DOR is charged with administering the tax laws of the state, WIS. STAT. § 73.03(1), and the Tax Appeals Commission has "the final authority for the hearing and determination of all questions of law and fact" arising under the tax laws, including reviewing DOR's decisions under WIS. STAT. § 77.59(4). *See* WIS.

492

STAT. § 73.01(4)(a); *see also* WIS. STAT. § 73.015(1) and § 77.59(6)(b). We have recognized that "[w]ithout question, the commission has considerable experience in the administration of the sales-tax statutes . . . ." *See Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 820, 581 N.W.2d 585 (Ct. App. 1998) (in the context of judicial review of administrative decisions).

¶ 42.  The plaintiffs argue that the construction of a statute and its application to a given set of facts is a question of law, which courts generally decide de novo. *See id.* They also argue that, because the meaning of WIS. STAT. § 7.51(21m) is plain, there is no need for a court to defer to the tax commission or DOR. *See id.* 817–19 (courts reviewing an agency's decision on the construction of a statute the agency is charged with administering may give the agency's construction either great weight or due weight deference, but will review de novo if the issue is one of first impression and the agency is in no better position than the court to decide the issue). *See also General Cas. Co. of Wis. v. DOR*, 2002 WI App 248, ¶ 4, 258 Wis. 2d 196, 653 N.W.2d 513 (if statutory language is unambiguous, no need to defer to agency when reviewing its construction).

¶ 43.  We agree with the circuit court that the proper construction and application of WIS. STAT. § 77.51(21m) may require fact finding to determine what the disputed services entail; in addition, the question of how broadly or narrowly to construe the definition may involve policy judgments as well. Deferral to the administrative agency under the primary jurisdiction doctrine is appropriate when an issue of statutory construction "appear[s] to be inextricably interwoven with issues . . . [that] may require an un-

493

derstanding of . . . subjects within the expertise of [the agency]." *Brookfield*, 171 Wis. 2d at 423.

¶ 44.   As for plaintiffs' argument that the court should have considered the prior ruling rejecting the primary jurisdiction argument, we observe initially that Ameritech does not agree that there was such a prior ruling; rather, Ameritech asserts, the circuit court denied its initial motion to dismiss without referring to its argument based on primary jurisdiction. However, it is unnecessary to resolve this dispute. Assuming without deciding that the plaintiffs are correct that an earlier ruling rejected dismissal based on primary jurisdiction, courts have the authority to reconsider their own rulings. *See Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 293–95, 491 N.W.2d 119 (Ct. App. 1992). That applies where, as here, a different presiding judge decides the motion for reconsideration. *See Dietrich v. Elliott*, 190 Wis. 2d 816, 822, 528 N.W.2d 17 (Ct. App. 1995) (successor judge in a circuit court proceeding has authority to modify or reverse ruling of predecessor judge if predecessor judge had authority to make such modification). The issue on appeal before this court is whether Judge Nowakowski properly exercised the court's discretion in his decision on primary jurisdiction given the record before him and the law presented, not whether the first presiding judge did so.

¶ 45.   The circuit court did consider the length of time this action had been pending and the additional delay that would be caused. However, its conclusion that deferring to the administrative agencies was nonetheless appropriate is reasonable. The February 2003 ruling on the voluntary payment issue affected the question of what issues remained in the case, and, thus, affected the analysis of the application of the primary

jurisdiction doctrine. While it may be unfortunate for the plaintiffs that the renewed motion for dismissal based on the primary jurisdiction doctrine was not brought sooner, the circuit court did not view the timing of the motion as a reason to deny it. Nothing in the record suggests this was unreasonable.

¶ 46. Finally, the plaintiffs' argument that dismissal of the amended complaint deprives them of their class remedies appears to assume that they could obtain in this class action the monetary relief they sought. However, we have already concluded the voluntary payment doctrine bars the claims for monetary relief; thus, the circuit court properly considered that factor in its analysis. The circuit court also properly concluded that the plaintiffs could obtain a legal ruling through administrative remedies that would have the same prospective and binding effect as declaratory or injunctive relief granted by the court.[12]

## CONCLUSION

¶ 47. We affirm the circuit court's order dismissing the amended complaint because the court correctly determined that the voluntary payment doctrine barred the monetary claims; did not erroneously deny the plaintiffs' permission to file a second amended complaint; and properly exercised its discretion in dismiss-

---

[12] At oral argument questions arose on the existence of a common law cause of action and the computation of the bills, and the parties filed letter briefs on those points. Our analysis and conclusions on the voluntary payment and primary jurisdiction issues have made it unnecessary to consider the supplemental letter briefs. For this reason, we do not address the plaintiffs' objections to Ameritech's October 6, 2006 letter on the computation of the bills; and we deny their motion to reply to DOR's letter of October 9, 2006.

ing the claims for injunctive and declaratory relief on the basis of the primary jurisdiction doctrine.

*By the Court.*—Order affirmed.