# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 
2021AP1526-CR
2021AP1527-CR

†Petition for Review Filed

Complete Title of Case:

**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**RASHEEM D. DAVIS,**

**DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | April 4, 2023 |
| Submitted on Briefs: | April 13, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Donald, P.J., White and Dugan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher P. August* of the *Office of the State Public Defender* in Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul* and *John A. Blimling* of the *Wisconsin Department of Justice* in Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2023

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. 2021AP1526-CR
2021AP1527-CR
STATE OF WISCONSIN

Cir. Ct. Nos. 2020CF774
2019CF4828

IN COURT OF APPEALS

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RASHEEM D. DAVIS,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Milwaukee County: GLENN H. YAMAHIRO and FREDERICK C. ROSA, Judges. *Affirmed.*

Before Donald, P.J., Dugan and White, JJ.

¶1 DUGAN, J. Rasheem D. Davis appeals from two judgments of conviction—one for false imprisonment and robbery with use of force, as acts of

domestic violence, and one for fleeing or eluding an officer.[1] He also appeals from orders of the circuit court denying his motion for postconviction relief, without a hearing. On appeal, he argues that the trial court lacked subject matter jurisdiction because it orally dismissed his case charging false imprisonment and robbery with use of force, without prejudice, when a witness did not appear for trial, but rescinded that order minutes later and the case proceeded to trial that same day before a different judge. He also argues that his trial counsel was ineffective for failing to object to a lack of personal jurisdiction, which he argues occurred when the court orally dismissed the case without prejudice, that he is entitled to plea withdrawal in his case charging fleeing or eluding an officer, and that the evidence was insufficient to support his conviction for robbery with use of force.

¶2     We conclude that the fact that the circuit court orally dismissed his case charging false imprisonment and robbery, without prejudice, but rescinded that order minutes later, did not result in the trial court losing subject matter jurisdiction over Davis's case. Consequently, we also reject Davis's claims of ineffective assistance of counsel and plea withdrawal, which are all premised on his claim that the circuit court's order dismissing the case without prejudice was a final disposition of Davis's case and, therefore, the trial court lost subject matter jurisdiction and personal jurisdiction. We further conclude that the evidence introduced at trial was sufficient to support Davis's conviction for robbery with use of force. Accordingly, we affirm the judgments of conviction and the circuit court's orders denying Davis's postconviction motion, without a hearing.

---

[1] The Honorable Glenn H. Yamahiro presided over Davis's trial, plea, and sentencing. The Honorable Frederick C. Rosa entered the orders denying Davis's postconviction motions. We refer to Judge Yamahiro as the trial court and Judge Rosa as the circuit court.

**BACKGROUND**

¶3    The State charged Davis in two separate cases underlying this appeal. In the first case, Milwaukee County Circuit Court Case No. 2019CF4828, on October 30, 2019, the State charged Davis with one count each of false imprisonment, robbery with use of force, misdemeanor battery, disorderly conduct, and misdemeanor bail jumping, all with the domestic abuse enhancers. In the second case, Milwaukee County Circuit Court Case No. 2020CF774, on February 19, 2020, the State charged Davis with fleeing or eluding an officer and second-degree recklessly endangering safety, with the domestic abuse enhancer. Both cases stemmed from incidents related to a romantic relationship Davis had with Alicia.[2] As alleged in the criminal complaint in his first case, Case No. 2019CF4828, on October 28, 2019, Davis approached Alicia after one of her classes at Milwaukee Area Technical College (MATC), followed her into a bathroom, trapped her in a bathroom stall, grabbed her by the neck, bit her on the face, and took her phone. In the criminal complaint in his second case, Case No. 2020CF774, the State alleged that on October 19, 2019, the police attempted to conduct a "welfare check" of Alicia by stopping Alicia's car, which was being driven by Davis. At the time of the welfare check, Alicia was riding as a passenger in her car.

¶4    On August 3, 2020, at 9:26 a.m., the circuit court called Davis's case and asked if Case No. 2019CF4828 was prepared for trial. The court advised the parties that it had several speedy trials set that morning, and it was "essentially

---

[2] Pursuant to WIS. STAT. RULE 809.86 (2021-22), we refer to the victim in this matter using a pseudonym. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

4

triaging the cases to see which ones are ready to go[.]"[3] The State advised that it was not prepared to move forward with the trial due to an issue with subpoenas and inconsistent contact with Alicia. Trial counsel moved to have the case dismissed, and the circuit court dismissed the case without prejudice. Further proceedings regarding setting a date for Davis's other cases then occurred off the record.[4] Shortly thereafter, the court went back on the record when the State informed the court that Alicia was present and that the State was ready to proceed to trial. The circuit court then advised the parties that another court might be available to try Davis's case. The case was then set to be recalled at 10:45 a.m. to see how it would proceed. The proceedings concluded at 9:30 a.m.

¶5 Later that day, Davis's case was transferred to the trial court, and the jury trial proceeded to trial that same day. At trial, Alicia and a responding officer testified. The jury also saw photos of the bite mark on Alicia's face, bodycam footage from the responding officer, and surveillance video footage from MATC.

¶6 Alicia testified that she was in a romantic relationship with Davis in October 2019, and on the day of the incident, she told Davis that she wanted to end the relationship. She further testified that she was texting with Davis during her class, and when she left class, Davis was waiting for her in the hallway. She stated that Davis was mad about her ending the relationship and told her that "it wasn't happening." Alicia testified that she tried to walk away, but Davis grabbed her arm. She then tried to leave, but Davis followed her. She went into a women's bathroom trying to escape Davis, but Davis followed her into one of the stalls and trapped her

---

[3] Because the court was triaging the cases, Davis, who was in custody, was not produced at that time, and trial counsel asked that Davis's appearance be waived.

[4] Davis faced criminal charges in several other cases that are not at issue in this appeal.

5

in the stall. Alicia testified that Davis grabbed her by the neck and demanded that she use her phone to send a text saying that she was still in a relationship with Davis. When she did not comply, Davis bit her, and she "grabbed [her] phone and gave it to him." However, Alicia then clarified that she took her phone out of her pocket, and Davis grabbed her phone out of her hand and ran out of the stall.

¶7 Alicia testified that she chased after Davis. Davis told Alicia that he threw her phone in the toilet, ran out of the bathroom, and left the building through the fire exit, setting off the fire alarm. After Alicia confirmed that her phone was not in the toilet, she followed Davis out to the alley. She testified that she yelled at Davis in the alley to give her phone back to her, and that Davis attempted to give her cigarettes and baby pictures "[t]o insure [sic] [her] that he's coming back to give [her the] phone." Alicia rejected the cigarettes and baby pictures, and she told Davis that she just wanted her phone back. Davis left and told Alicia to meet him around the corner and he would give her phone back. She testified that Davis told her to meet him around the corner because he was scared the police were going to pull up because the alarms were going off. Alicia waited around the corner for thirty minutes, but she left after Davis did not come back. She testified that, at that point, she located a police officer to report the incident.[5]

¶8 The jury found Davis guilty as charged in Case No. 2019CF4828, and following the guilty verdict, Davis then pled guilty in Case No. 2020CF774 to one count of fleeing or eluding an officer, and the additional charge of second-degree recklessly endangering safety was dismissed and read in for the purposes of

---

[5] Alicia also testified about an email that she wrote to the Milwaukee County District Attorney's office following the report she made to the police. Her email was inconsistent with the account that she originally gave to the police, and she testified at trial that the statements in her email were intended to make the incident seem "less serious."

sentencing. Both cases proceeded to sentencing, and Davis received a global sentence of six years and nine months of imprisonment.

¶9   Davis filed a postconviction motion in which he argued that the trial court lacked subject matter jurisdiction to conduct the trial in Case No. 2019CF4828, that trial counsel was ineffective for failing to object to a lack of personal jurisdiction, and that he was entitled to withdraw his plea to the charge of fleeing or eluding an officer in Case No. 2020CF774.[6]

¶10   The circuit court denied his motion. In a written order, the court stated:

> The court's power to rescind continues at least to the point that the order of dismissal is entered on the docket. That did not happen in this case because the court rescinded the dismissal only moments after it was granted. Although the court did not expressly state that it was rescinding the dismissal, that is effectively what the court did when the State advised that its essential witness was actually present, and the court set the case back on for trial before Judge Yamahiro. Under circumstances where the motion for dismissal was granted without prejudice, and new information was brought to the court only moments later, with the attorneys present, the court finds that the defendant was not prejudiced when the court effectively rescinded the dismissal. Jeopardy had not attached, and therefore, the court was not without subject matter jurisdiction.

Having rejected Davis's argument that the trial court lost subject matter jurisdiction, the circuit court also found that Davis did not receive ineffective assistance of counsel and that he was not entitled to plea withdrawal.

¶11   Davis now appeals.

---

[6] Davis also sought additional sentence credit. The circuit court granted Davis's request. Davis's request for sentence credit is not at issue in this appeal.

7

**DISCUSSION**

¶12     On appeal, Davis raises four main arguments.  First, he argues that the trial court lacked subject matter jurisdiction in Case No. 2019CF4828.  Second, he argues that his trial counsel was ineffective for failing to object to a lack of personal jurisdiction in Case No. 2019CF4828.  Third, he argues that he is entitled to plea withdrawal in Case No. 2020CF774.  Fourth, he argues that the evidence introduced at trial was insufficient to support his conviction in Case No. 2019CF4828 on the charge of robbery with the use of force.  We address each argument in turn.

## I.     Subject Matter Jurisdiction

¶13     Davis first argues that the trial court lacked subject matter jurisdiction in Case No. 2019CF4828.  In particular, he argues that the trial court lost subject matter jurisdiction when his case was dismissed without prejudice after the State advised the court that it was not prepared to move forward with the trial.  He contends that the dismissal constituted a "final disposition" of the case and caused subject matter jurisdiction to "expire."  Thus, Davis argues that his subsequent trial and conviction amounts to a "legal nullity."  We disagree.

¶14     "[S]ubject matter jurisdiction refers to the power of a court to decide certain types of actions."  *State v. Smith*, 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508.  "The circuit courts in Wisconsin are courts of general jurisdiction.  They have original subject matter jurisdiction of all matters, civil and criminal, not excepted in the constitution or prohibited by law."  *Mack v. State*, 93 Wis. 2d 287, 294, 286 N.W.2d 563 (1980); *see also* WIS. CONST. art. VII, § 8.  "The circuit court's subject-matter jurisdiction attaches when the complaint is filed."  *State v. Aniton*, 183 Wis. 2d 125, 129, 515 N.W.2d 302 (Ct. App. 1994).  "Once jurisdiction has attached it continues until final disposition."  *State v. Asfoor*, 75 Wis. 2d 411,

424, 249 N.W.2d 529 (1977). Davis argues that the final disposition in Case No. 2019CF4828 occurred when the circuit court dismissed the case without prejudice, causing the trial court to lose its subject matter jurisdiction over his case and rendering his subsequent trial and conviction a legal nullity.

¶15    By contrast, the State argues that this is not an issue of subject matter jurisdiction, but is rather one of competency because "a circuit court is never without subject matter jurisdiction." *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶1, 273 Wis. 2d 76, 681 N.W.2d 190. Instead, "a court's 'competency,' as the term is understood in Wisconsin, is not jurisdictional at all, but instead, is defined as 'the power of a court to exercise its subject matter jurisdiction' in a particular case." *Smith*, 283 Wis. 2d 57, ¶18 (citation omitted). Then, the State argues that the trial court did not lack competency to proceed with Davis's trial and that it also had the inherent authority to reconsider its own rulings. *See Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶44, 298 Wis. 2d 468, 727 N.W.2d 546. In making this argument, the State emphasizes that the circuit court's reinstatement of the charges occurred minutes after the oral dismissal without prejudice and all the events at issue occurred within the same hearing. The State also highlights that no written order was ever entered, and the only order in the record was the circuit court's oral order of dismissal made during the hearing and the court clerk did not enter the oral dismissal on the docket.

¶16    We review both matters dealing with a trial court's subject matter jurisdiction and competency *de novo. City of Eau Claire v. Booth*, 2016 WI 65, ¶6, 370 Wis. 2d 595, 882 N.W.2d 738. Upon review, we conclude that the trial court never lost subject matter jurisdiction in Davis's case, and therefore, we reject

Davis's argument that his conviction in Case No. 2019CF4828 was a "legal nullity."[7]

¶17    In this regard, we find *United States v. Green*, 414 F.2d 1174 (D.C. Cir. 1969), and *Lyles v. United States*, 920 A.2d 446 (D.C. 2007), persuasive.[8]  In *Green*, the court orally granted a defendant's motion to dismiss the indictment that the government had filed when an informant was not produced for questioning. *Green*, 414 F.2d at 1175.  The government objected to the dismissal because "it had not been given an opportunity to argue the question," and the court "immediately" withdrew its oral ruling. *Id.*  On appeal, the United States Court of Appeals for the D.C. Circuit stated, "We hold that under these circumstances the oral ruling has no legal significance and is not a judgment of acquittal barring further prosecution.  The oral ruling of a trial judge is not immutable, and is of course subject to further reflection, reconsideration and change." *Id.*

¶18    Relying on *Green*, the District of Columbia Court of Appeals in *Lyles* addressed a similar situation in which the trial court orally dismissed the charges against the defendant "without prejudice" when the complaining witness failed to appear. *Lyles*, 920 A.2d at 447-48.  The complaining witness appeared shortly

---

[7] We do not address the State's argument regarding competency further.  Davis reiterates in his reply brief that this is an issue of subject matter jurisdiction, and he argues that this is not a matter of competency.  Indeed, he concedes that he is "not alleging that the circuit court failed to abide by a statutory mandate, which would have created a loss of competency."  Given that competency is generally considered to be a matter of compliance with statutory mandates, we do not address the State's argument on competency further. *See City of Eau Claire v. Booth*, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738.

[8] We recognize that Wisconsin courts are not bound to follow case law from other jurisdictions. *See State v. Muckerheide*, 2007 WI 5, ¶37, 298 Wis. 2d 553, 725 N.W.2d 930.  However, "such case law is oftentimes helpful, and may be persuasive." *Id.*, ¶38.  Given the lack of Wisconsin case law on point, we consider both *United States v. Green*, 414 F.2d 1174 (D.C. Cir. 1969), and *Lyles v. United States*, 920 A.2d 446 (D.C. 2007), helpful and persuasive in this instance.

thereafter, and the trial court rescinded its oral dismissal about an hour later and reinstated the charges against the defendant. *Id.* The trial court's rescission and reinstatement of the charges also occurred "prior to the clerk's entry of the oral dismissal on the docket." *Id.* at 448. The defendant there argued that the trial court lacked jurisdiction over his case "absent a refiling of the charges." *Id.* at 447. The court concluded, "[S]ince the oral dismissal had not yet been entered on the docket, the trial court retained the power to rescind the oral dismissal, absent undue prejudice to the defendant." *Id.*

¶19     Similar to *Green* and *Lyles*, the circuit court here made an oral ruling to dismiss the charges against Davis without prejudice when the State indicated that it was not prepared to move forward with the trial. Merely minutes later—and during the same hearing—the State's witness appeared, the State indicated that it could move forward with the trial, and the circuit court rescinded its prior oral ruling and reinstated the charges by transferring the case to the trial court for trial. At this point in the proceedings, the circuit court's oral ruling dismissing the charges against Davis had also not yet been entered on the docket. Given the facts of this case, we conclude that the circuit court here had the power to rescind its oral dismissal of the charges, and we further conclude that it retained subject matter jurisdiction in Davis's case. There was also "no appreciable prejudice [that] resulted from the rescission of the oral order of dismissal" given the ongoing nature of the hearing and the short period of time that lapsed between the oral ruling dismissing the charges and the witness's appearance that caused the matter to move forward with the trial. *See Lyles*, 920 A.2d at 450. Consequently, we conclude that Davis's subsequent trial and conviction was, therefore, not a legal nullity.

¶20     Furthermore, it is firmly established in Wisconsin law that a circuit court has the inherent authority to reconsider its own rulings during ongoing

proceedings. ***Butcher***, 298 Wis. 2d 468, ¶44; *see also **State v. Schwind***, 2019 WI 48, ¶¶12-19, 386 Wis. 2d 526, 926 N.W.2d 742 (providing an overview of a court's inherent authority). Again, evaluating the facts of this case, the circuit court made an oral ruling at the beginning of the hearing and, due to a change in circumstances that occurred during the same hearing, reconsidered that same ruling minutes later. We conclude that the circuit court's actions here were, therefore, nothing more than an exercise of its inherent authority to reconsider its own rulings and its subject matter jurisdiction over Davis's case did not expire.[9]

¶21 As a result, we conclude that the trial court had subject matter jurisdiction to conduct the trial in Davis's case. We conclude that the circuit court's oral ruling was not a final disposition, as Davis contends, and the following jury trial and verdict was not a legal nullity.

## II. Ineffective Assistance of Counsel and Plea Withdrawal

¶22 Additionally, Davis makes two arguments for ineffective assistance of counsel and plea withdrawal premised on the trial court's lack of subject matter jurisdiction and a final disposition in Case No. 2019CF4828. He argues that he is, at the very least, entitled to a hearing on the issue of ineffective assistance of counsel and plea withdrawal. As a result of our conclusion above, we reject Davis's remaining arguments for ineffective assistance of counsel and plea withdrawal.

---

[9] Davis raises an argument based on what the circuit court described as "[t]he closest Wisconsin case on point"—***State v. Asfoor***, 75 Wis. 2d 411, 249 N.W.2d 529 (1977)—and he argues that it is "negative authority" that "helps to explain what a final disposition *is not*." We are not persuaded by Davis's argument, and we do not consider ***Asfoor*** applicable to this case, given that it does not define what constitutes a final disposition. Instead, we agree with the circuit court's assessment that ***Asfoor*** presents "a factual distinction … but not necessarily a legally significant one in light of ***Lyles*** and ***Green***."

¶23    In his argument for ineffective assistance of counsel, Davis argues that his trial counsel was ineffective for failing to object to the trial court's lack of personal jurisdiction over him in Case No. 2019CF4828. He maintains that the circuit court's oral ruling dismissing the charges against him was a final disposition and rendered the criminal complaint legally invalid. In arguing for plea withdrawal, Davis additionally argues that he is entitled to plea withdrawal in Case No. 2020CF774 because he argues that his plea was motivated by the unfavorable jury verdict in Case No. 2019CF4828. He further argues that, because the jury verdict in Case No. 2019CF4828 was a legal nullity, his plea in Case No. 2020CF774 was not entered knowingly, intelligently, and voluntarily.

¶24    Having rejected Davis's argument that the trial court lacked subject matter jurisdiction on the basis that his case was finally disposed of, we necessarily must also reject Davis's two arguments for ineffective assistance of counsel and plea withdrawal that are similarly premised on his final disposition argument in Case No. 2019CF4828, and the lack of a legally valid complaint to continue the proceedings.[10] We, thus, do not address Davis's two arguments for ineffective assistance of counsel and plea withdrawal further, as we have already concluded that the circuit court's oral ruling was not a final disposition of Case No. 2019CF4828 and the further proceedings were not a legal nullity. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

¶25    Moreover, trial counsel cannot be considered ineffective for failing to raise a meritless claim. *See State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d

---

[10] Indeed, concerning his argument for plea withdrawal, Davis asserts in his reply brief that he "agrees that the legal questions with respect to [Case No.] 19CF4828 are dispositive."

13

270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit."). Similarly, Davis's plea cannot be considered unknowing, unintelligent, or involuntary if Case No. 2019CF4828 is not a legal nullity as he contends. *Cf. **State v. Dillard***, 2014 WI 123, ¶39, 358 Wis. 2d 543, 859 N.W.2d 44 (noting that inaccurate information can compromise a plea).

### III.    Sufficiency of the Evidence

¶26    Last, Davis argues that the evidence introduced at trial was insufficient to support his conviction in Case No. 2019CF4828 for robbery with use of force. Specifically, Davis argues that the evidence introduced at trial is insufficient to establish that he had any intent to permanently deprive Alicia of her phone. *See* WIS JI—CRIMINAL 1479 (listing the third element of robbery with use of force as "[t]he defendant took the property with the intent to steal").

¶27    A challenge to the sufficiency of the evidence to support a criminal conviction is a question of law that we review *de novo*. **State v. Smith**, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. **State v. Poellinger** sets forth the standards that we apply when reviewing the sufficiency of the evidence to support a conviction as follows:

> [We] may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citations omitted). Additionally,

> [i]n reviewing the sufficiency of circumstantial evidence to support a conviction, [we] need not concern [ourselves] in any way with evidence which might support other theories of the crime. [We] need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered.

*Id.* at 507-08. Applying this standard of review, we conclude that there was sufficient evidence for the jury to have reasonably concluded that Davis was guilty of robbery with the use of force and, more specifically, with the intent to permanently deprive Alicia of her phone.

¶28 The charge of robbery with use of force required the State to prove four elements. *See* WIS JI—CRIMINAL 1479. Davis challenges the State's evidence with regard to the third element: "The defendant took the property with the intent to steal." *Id.* "This requires that the defendant had the mental purpose to take and carry away property of another without consent and that the defendant intended to deprive [Alicia] permanently of possession of the property." *Id.* (footnote omitted).

¶29 Davis argues that the evidence introduced at trial is insufficient to support a finding that he intended to permanently deprive Alicia of her phone—he specifically points to Alicia's testimony that Davis attempted to give Alicia collateral for the return of her phone, asked Alicia to wait for him, and eventually did meet with Alicia to return her phone. The State counters that Davis's conduct and the circumstances surrounding the taking of Alicia's phone unquestionably provided the jury with enough evidence to be convinced that Davis had the intent to permanently deprive Alicia of possession of her phone. We note that in *Sartin v. State*, 44 Wis. 2d 138, 145, 170 N.W.2d 727 (1969) (citation omitted), our supreme court stated, "Intent is a state of mind existing at the time a person commits an offense." It went on to say that "[t]he mind of an alleged offender, however, may

15

be read from his acts, conduct, and inferences fairly deducible from all the circumstances." *Id.* (citation omitted).

¶30 Thus, we look to the record to determine if the jury, acting reasonably, could have been convinced beyond a reasonable doubt by the evidence in the record, that Davis intended to permanently deprive Alicia of her phone.  At trial, Alicia testified that Davis was mad about her ending the relationship and told her that "it wasn't happening."  Davis physically attacked her in the women's bathroom, blocked her attempts to get out of the bathroom stall, grabbed her by her neck and demanded that she use her phone to send a text saying that she was still in a relationship with Davis, demanded her phone, and as she was trying to get out of the stall by crawling on the floor, he picked her up and bit her on her face, and then grabbed her phone from her.  Alicia testified that as she chased after him, Davis threw something into the toilet, told Alicia that he threw her phone in the toilet, ran out of the bathroom, and left the building through the fire exit, setting off the fire alarm.  After Alicia confirmed that her phone was not in the toilet, she chased after Davis.  When she caught up with Davis in the alley, she yelled at him to give her phone back to her, and Davis attempted to give her cigarettes and baby pictures "[t]o insure [sic] [her] that he's coming back to give [her the] phone."  Alicia rejected the "collateral" and she told Davis that she just wanted her phone back.

¶31 Alicia further testified that when she refused to accept Davis's collateral, Davis left and told Alicia to meet him around the corner because he was "scared" the police were going to pull up because of the alarms going off and he would give her phone back.  Further, Alicia testified that she waited around the corner for thirty minutes, but she left after Davis did not come back.  At that point, Alicia located police officers who had responded to the alarms and told them what happened.  She testified that she was still emotional from the incident when she

talked with the officers. Alicia also said that she was going to talk with an assistant district attorney the next day after the incident. Davis only returned Alicia's phone to her after Alicia told the police what happened, but before she had her meeting with an assistant district attorney.

¶32  From this testimony, we conclude that the jury, acting reasonably, could be convinced beyond a reasonable doubt that Davis intended to permanently deprive Alicia of her phone, even if Alicia did eventually obtain her phone.

¶33  "The credibility of the witnesses and the weight of the evidence is for the trier of fact." *Poellinger*, 153 Wis. 2d at 504 (citation omitted). This court

> may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.* at 507 (citations omitted). Thus, this court will not substitute our judgment here for that of the jury because the evidence, viewed most favorably to the State and the conviction, is not so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

¶34  Furthermore, we "need not concern [ourselves] in any way with evidence which might support other theories of the crime," and we "need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered." *Id.* at 507-08. In this case, Davis's argument amounts to a disagreement with the inference the jury chose to

17

make from Alicia's testimony, and we will not substitute our judgment for that of the jury's judgment. *See id.* at 507.

¶35    Consequently, we reject Davis's argument that the State's evidence was insufficient to prove that Davis intended to permanently deprive Alicia of her phone.

## CONCLUSION

¶36    In sum, we conclude that the trial court had subject matter jurisdiction to conduct Davis's trial in Case No. 2019CF4828, and Davis's trial that resulted in his conviction in Case No. 2019CF4828 was not a legal nullity. The circuit court's oral ruling was not a final disposition, and it did not divest the trial court of subject matter jurisdiction or cause subject matter jurisdiction to expire. Consequently, we also reject Davis's additional arguments for ineffective assistance of counsel and plea withdrawal that are premised on his argument that the trial court lacked subject matter jurisdiction and that Case No. 2019CF4828 had been finally disposed of. We further conclude that the evidence introduced by the State at Davis's trial was sufficient to support the jury's verdict for robbery with use of force, and we reject Davis's argument that the evidence was insufficient to prove that he had the intent to permanently deprive Alicia of her phone. Accordingly, we affirm.

*By the Court.*—Judgments and orders affirmed.