CITY OF MILWAUKEE, Appellant, vs. KNOX, Respondent.

*March 31—April 28, 1936.*

For the appellant there was a brief by *Max Raskin,* city attorney, and *H. A. Kovenock,* assistant city attorney, and oral argument by *Mr. William F. Quick,* assistant city attorney, and *Mr. Kovenock.*

For the respondent there was a brief by *John J. Maher* and *Bender, Trump & McIntyre,* attorneys, and *Walter H. Bender* of counsel, all of Milwaukee, and oral argument by *Mr. Bender.*

FOWLER, J. This is an action by the city of Milwaukee against Sidney B. Knox to recover from him the amount of profits made by a partnership, of which he was a member, that was engaged in the business of purchasing lands within the city on delinquent tax sales, on the theory that profits were made through the use of city funds illegally procured by the partnership through secret deals with the city treasurer. Sidney is and was during the period involved a nonresident of the state, so that the statute of limitations has not run against an action for recovery of money against him, although it has run against the other surviving member of the partnership who has resided in this state ever since the transactions involved occurred.

The facts are undisputed. The defendant is one of three partners, Richard, John, and Sidney B. Knox, who during the period involved were engaged in the business of buying in land at tax sales and taking tax sale certificates therefor. One of the partners died during the period, and the other two purchased and became the owners of his interest in the business. Under the law the owner of land might redeem it from a tax sale at any time before the issuance of a tax deed thereon. On payment of the money in redemption to the city

treasurer the money was held by the city for the benefit of the holder of the tax certificate. The amount paid to redeem the land from tax sale which was so held for the certificate holder was the amount of the tax and ten per cent interest thereon from the date of sale to the time of payment.

The tax sales during the period involved were begun on February 1st of the current years and continued from day to day until all lands on which the taxes had not been paid were sold. The statute provided for payment in cash of the amount of the tax when demanded by the city treasurer. On payment of the cash the tax sale certificate was delivered to the purchaser. The date fixed by the city treasurer for payment during the period was March 31st, the interim from the time of sale being necessary for the preparation of the certificates of sale. In case the amount of the tax was not paid by the purchaser at the time demanded, the statute required that the land should be again offered for sale and in case of no bidder the statute made the city the purchaser, and the certificate of sale was in such case made out to and became the property of the city. In no case could the city be the purchaser or procure a tax certificate unless the land was first offered to the public and no bid was received. The sale was made to the person offering to pay the tax for the least proportional interest in the land sold. The effect of the certificate was to give the purchaser a lien on the land sold, or such interest therein as his bid covered, for the amount of the tax and the interest accumulated thereon up to the time of redemption by the landowner, or a tax deed of the land or the interest therein covered by the bid in case the land was not redeemed.

In the year 1922 the said partnership bid in at the tax sale, lands, the taxes on which aggregated $241,932.28, and by its bid became obligated to pay to the city treasurer that sum in cash on March 31st as condition of receiving the tax certificates covering the lands. It had made arrangements at its

bank, as it had done for many years previous, for a loan to enable it to make the cash payment to the city treasurer. It was to give its note bearing six per cent interest to the bank for the amount loaned and deposit the certificates as collateral security for the note, and $22,000 of the loan was to be kept on deposit in the bank. The amount to be so borrowed at the bank was $261,000.

On the morning of March 31st, after the arrangement with the bank above stated had been made, one of the partners, Richard, was in the city treasurer's office and the city treasurer, Mr. Drew, who had theretofore learned that the money to take up the certificates was to be procured from the bank at six per cent interest, suggested to Richard that he do business with the city and Richard agreed to do so. Thereupon Richard delivered to the city treasurer the note of the partnership running to the city, for $241,000, and the partnership's check for $932.28, and informed the bank that he had procured the money elsewhere. By arrangement of the partners, and for convenience only, the tax certificates taken in their business were taken in the name of the defendant Sidney B. Knox for the benefit of the partnership, and Richard held a power of attorney from Sidney authorizing him to act for him in assigning and otherwise dealing with the certificates.

During the years involved, 1922, 1923, 1924, and 1925, the partnership bid in at tax sales lands on which the taxes aggregated over $1,100,000, and the same course was pursued in paying for the certificates received by the firm as in 1922. As redemption moneys were paid in, the city treasurer credited the amounts on the notes, and at times Richard made cash payments. During the period involved the amounts of redemption moneys so received and credited amounted to eighty-one per cent of the total amount paid to the city as principal and interest on its notes. Thus the city, through giving credit to the partnership, indirectly financed the trans-

actions involved to the extent of eighty-one per cent, while the partnership financed them to the extent of nineteen per cent. The city treasurer kept the notes accepted by him in payment of tax certificates in a private compartment in his office. The fact as to the taking of the notes and the payment for the certificates by note instead of cash nowhere appeared on the books or records kept by or under the direction of the city treasurer. The books were kept in cash balance by direction of the city treasurer by offsetting false entries. All notes delivered to the city treasurer by the partnership were paid in full, both principal and interest. The city was currently receiving two per cent interest on its funds on deposit in local banks. By the transactions as carried out the city actually received four per cent more in interest than it would have received had the partnership paid for its certificates in cash. The partnership also gained by the transactions, in that it was relieved from delivering the certificates to the bank to be held as collateral, from the inconvenience of procuring the certificates from the bank to surrender them for redemption money or procuring the bank to surrender them for such money, and from keeping the $22,000 deposit in the bank from which it made its loans and from borrowing and paying interest on that amount. The profit made by the partnership through the tax certificates delivered to them during the period involved was $104,754.24 in excess of the interest paid to the city. The city demands judgment for this amount. The defendant denies liability upon the facts. The trial court held the defendant not liable and dismissed the complaint.

The appellant claims it is entitled to recover upon either one of two theories: (1) The redemption moneys paid to the partnership were moneys of the city unlawfully paid to it out of the public treasury for which an action lies for money had and received; and (2) the partnership became a constructive trustee for the city of moneys of the city transferred to it,

and is bound to restore the moneys and to account for all profits made through its use.

(1) The action for money had and received is governed by equitable principles. It is based upon the fact of unjust enrichment. The defendant must be unjustly enriched by moneys to which the other party was legally and justly entitled. The money by which the one party was unjustly enriched must have legally and equitably belonged to the other party. And the other party cannot have again and cannot recover what the one party has already paid him. The partnership has paid to the city the full amount of the original tax. All the city can recover on the theory of money had and received is the excess of interest to which the city was entitled, received by the partnership over that paid by the partnership to the city. To be entitled to recover anything on this theory the city must have been entitled to the ten per cent interest that the partnership received on the face of the certificates that it turned in to the city.

It is here that the basis of the action for money had and received falls, and the action falls with it.

Appellant's counsel base the city's claim upon the proposition that the tax sales to the partnership were voided, and the tax certificates delivered to them were rendered void, by the failure of the partnership to pay cash when the certificates were delivered. If the certificates were void, nothing was payable upon them, either principal or interest. Assuming, but not deciding, that the certificates were void, the city was entitled to receive from the landowners who redeemed from the void tax certificates only the amount of the unpaid tax, and such interest, if any, on the amount of the tax as the statutes entitled the city to collect from the landowner when he paid his tax before the issuance of a tax certificate. No statute is cited to us, and we find none, authorizing the city to collect from the landowner any interest whatever on the amount of his tax when he pays it before a tax certificate

is issued. No sales having been made and no tax certificates having been issued, on appellant's theory that the sale and the certificates are void, the city was entitled to collect from the landowner only the amount of the tax, or, at most, by implication, the amount of the tax and the general legal rate of interest recoverable on debts past due when no other rate is expressed. That rate is six per cent. That rate was paid by the partnership to the city. The city was entitled to nothing more. It can claim no more from the partnership. The excess paid by the landowner did not belong to the city, but to the landowner. As the excess did not belong to the city, the partnership received no money from the city that it is under obligation to refund. If the tax certificates were void, the landowners are the only parties whose rights were affected by the illegal acts of the partnership and the city treasurer. The landowners are not complaining.

In explanation of the absence of a statute giving the city interest on delinquent taxes paid before tax sale, it may be stated that Milwaukee is a city of the first class. During the period involved, the statutes applicable to towns and cities other than cities of the first class provided for payment to the county treasurer of interest on delinquent taxes paid before the tax sale at twelve per cent. A general statute, sec. 74.02, Stats. 1921, made taxes delinquent on January 31st. Tax sales in cities of the first class began on February 1st. Elsewhere they began on May 1st. As no considerable time would elapse between the delinquent date and the date of sale in cities of the first class, and as tax certificates bear interest from the date of sale, the statutes made no provision for interest on taxes paid in such cities after January 31st and before the land was sold.

(2) Looking at the case from the appellant's other standpoint its position is no better. The partnership received no money from the city until it was paid by the city the redemption money paid in by the landowners. The redemption

money, as it was paid in, was applied to the payment of the notes. None of it was paid to the partnership except the excess over the amounts of the notes. The city, on the assumption that the tax sales and certificates were void, as stated under (1), had no right to the excess. The excess paid did not belong to the city. It was not city property and the partnership never became a constructive trustee of city property. Besides, the partnership did not make its profits out of the use of this money. It had already made its profits when it received the redemption money from the city. The profits were made through a course of illegal transactions, but those transactions did not make the partnership a trustee of city funds or property because it received no funds or property belonging to the city from the city.

Independent of the two grounds of recovery laid by the city, the city has no right of action because of the illegal transactions between its treasurer and another unless by the transactions the city was in some way injured by them. The city suffered no injury from the illegal transactions involved. Thus, neither upon the appellant's own theories of the case nor independent of them has the city any right of recovery from the defendant. The appellant is entirely correct in its contentions that bids on tax sales can only be paid in cash; that the treasurer has no right or authority to deliver tax certificates unless the amount thereof is actually paid in cash; that the transactions between the city treasurer and the partnership were illegal and reprehensible; and that the fact that the city did not lose anything by the transactions but in fact gained by them does not excuse or palliate them. Such transactions cannot be countenanced by the courts, and full redress or relief will be granted by the courts to anyone who has been injured by them. But that the extension of credit and the delivery of the tax certificates were unauthorized and illegal did not in themselves give the city right to recover

from the partnership its ill-gotten gains. And as the partnership was not liable, the defendant partner is not.

We are not unmindful of the rule stated in the American Law Institute's Restatement of Restitution and Unjust Enrichment (Proposed Final Draft), § 138 (2), that:

"A third person who colludes with a fiduciary in committing a breach of duty, and who obtains a benefit therefrom, is under a duty of restitution to the beneficiary."

But the word "restitution" in itself implies that the third person must have received something belonging to the beneficiary. As explained in comment *a* under said § 138:

"A fiduciary who commits a breach of his duty as fiduciary is guilty of tortious conduct, for which the beneficiary can obtain redress either at law or in equity for the *harm done*. As an alternative, the beneficiary is entitled to obtain the benefits obtained by the fiduciary through the breach of duty."

As of the fiduciary, so of the third person dealing with him. The third person must receive property of the beneficiary, or make profit out of the use of his property, before there can be anything to restore. Having received property he must restore it. And having made profit out of the use of the property, he must account for the profit as well as the property. But there must be receipt or use of property of the beneficiary or some other *"harm done"* him by the third person before any action either at law or in equity will lie against him by the beneficiary. Here, although the partnership was guilty of tortious conduct with the fiduciary of the city, it neither received any of the city's property nor did any other harm to the city.

*By the Court.*—The judgment of the circuit court is affirmed.