In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3679

JOHN SCHLUETER,

*Plaintiff-Appellant,*

*v.*

EDWARD C. LATEK and LATEK CAPITAL CORP.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cv-00127-LA—**Lynn S. Adelman**, *Judge.*

ARGUED APRIL 10, 2012—DECIDED JUNE 6, 2012

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge.*   This appeal in a diversity suit presents issues of Wisconsin law, both statutory law and common law. The plaintiff seeks recovery, on a theory of restitution, of a brokerage fee that he paid the defendants. The district court, deeming the parties *in pari delicto* (equally at fault), granted the defendants' motion to dismiss the complaint for failure to state a claim. The defendants are a corporation engaged in providing in-

vestment banking services to the equipment rental industry, and the corporation's principal. See www. latekcapital.com/services.html (visited May 22, 2012). We'll simplify our opinion by pretending that the only defendant is the corporation, which we'll call Latek; but at the end of the opinion we'll discuss briefly the plaintiff's joinder of Mr. Latek as an additional defendant.

The plaintiff, John Schlueter, was the owner of a corporation named Karl's Rental Center. He retained Latek to help him obtain either an equity investor in, or a buyer of, Karl's. On the advice of Latek, Schlueter entered into negotiations with a company called Horizon Partners that culminated in a sale of a majority of the plaintiff's stock in Karl's for some $30 million.

Latek billed the plaintiff $758,675 for its services in negotiating the deal. The plaintiff paid the fee without complaint or reservations but later brought this suit for the return of the entire fee on the ground that Latek had not had a brokerage license. Chapter 452 of the Wisconsin Statutes, entitled "Real Estate Practice," requires that one have a license to "negotiate a sale" of "an interest or estate in real estate, a time share, or a business or its goodwill, inventory, or fixtures, whether or not the business includes real property." Wis. Stats. §§ 452.01(2)(a), 452.03. Latek doesn't have a broker's license, or at least didn't when negotiating the deal with Horizon.

Besides defending the district court's ground of dismissal (the *in pari delicto* doctrine), Latek argues that under Wisconsin law, as under federal securities law, see *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 689-91 (1985);

*SEC v. National Presto Industries, Inc.*, 486 F.3d 305, 309-10 (7th Cir. 2007), the sale of stock in a business is not the sale of a business, and so Latek was not required to have a license to negotiate the sale of a majority stake in Karl's.

The only judicial decisions that we've found that bear on the issue are two federal district court decisions, only one recent. They agree with Latek. *Bertha v. Remy Int'l, Inc.*, 414 F. Supp. 2d 869, 877-81 (E.D. Wis. 2006); *Schaller v. Litton Industries, Inc.*, 307 F. Supp. 126, 133-35 (E.D. Wis. 1969). The opinions are well reasoned, but being federal trial court opinions they are not authoritative construals of the Wisconsin statute. Even a federal court of appeals opinion would not be authoritative on a question of state law.

The statute was amended after the *Bertha* decision, moreover, and it is the amended statute that applies to this case. The provision on which the court focused in *Bertha*, see 414 F. Supp. 2d at 874, 877, was not section 452.01(2)(a), quoted above, but section 452.01(2)(d), which defines (or, rather, defined) "broker" as someone who "negotiate[s] a sale . . . of any business, its goodwill, inventory, fixtures or an interest therein." That section has been deleted, while section 452.01(2)(a), which further defined a broker to include one who "negotiate[s] a sale . . . of *an interest* or estate in real estate," now reads, as we know, "negotiate[s] a sale . . . of . . . *an interest* or estate in real estate, a time share, or *a business or* its goodwill, inventory, or fixtures, whether or not the business includes real property." The words we've italicized are the key to the plaintiff's argument; one who owns stock in a corporation, he argues, owns "an interest" in a busi-

ness and therefore anyone who negotiates a sale of stock requires a license.

This can't be right, because it would require every securities broker in Wisconsin to have a real estate broker's license as well as a securities license, which securities brokers are already required to have. Wis. Stat. § 551.401(1). We don't know whether Latek has a securities license, and it doesn't matter; the plaintiff doesn't argue that it matters and probably Latek is exempt from having to have one because it was brokering a deal involving the issuer of the securities that were sold (Karl's Rental Center), and such brokering is exempt. Wis. Stat. § 551.401(2)(a).

The statutory changes to which the plaintiff points do not undermine the analysis in the *Bertha* opinion. The question whether ownership of stock is ownership of an interest in a business was the precise question that the court addressed in *Bertha* (as well as in the earlier district court opinion that we cited) and the amendments on which the plaintiff relies merely shifted the language interpreted in *Bertha* ("interest . . . in . . . a business") from subsection 2(d), which was repealed, to subsection 2(a), which was enlarged.

A considerable complication, however, is that Latek was hired to sell either the business or the plaintiff's stock in it. Had he done the former, as he initially tried to do, clearly he would have needed a license. He didn't consummate a sale of the business, but a failed negotiation is still a negotiation; the statute defines "negotiate" broadly, to mean "to provide to

a party assistance within the scope of the knowledge, skills, and training required under this chapter in developing a proposal or agreement relating to a transaction, including . . . participating in communications between parties related to the parties' interests in a transaction." Wis. Stat. § 452.01(5m)(a). Latek negotiated on Schlueter's behalf the letter of intent to sell the assets of his business, and this was "negotiating" for the sale of the business, albeit that sale fell through in favor of a sale of stock.

Is a license required for a failed attempt? Who knows? There's enough uncertainty about the proper interpretation of the amended statute that were it essential for our deciding this case correctly to choose between the rival interpretations, we would be inclined to certify the question to the Supreme Court of Wisconsin for an authoritative answer. But it is not essential. For there is another potentially dispositive issue, concerning the relief sought by the plaintiff for the alleged violation of the brokerage statute.

Although there is no indication that Latek was aware that it might be violating a statute in negotiating the sale of the plaintiff's stock in Karl's Rental Center, and no complaint about the quality of the service it rendered or the reasonableness of its fee, the plaintiff argues that he's entitled to restitution of the fee as punishment for Latek's violation, if there was a violation as we are now assuming for the sake of argument. The assumption is the premise of an alternative ground for affirmance—that the plaintiff is not entitled to the relief he is seeking even if there was a violation.

The fact that he was helped rather than hurt by the alleged violation and so is not entitled to damages is not dispositive. Restitution and damages are different remedies. Damages are measured by the plaintiff's loss, restitution by the defendant's gain. *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 79-80 (Wis. 1996); *Ryerson Inc. v. Federal Ins. Co.*, No. 10-3522, 2012 WL 1216282, at *2 (7th Cir. Apr. 12, 2012); 1 Dan B. Dobbs, *Law of Remedies* § 4.1(1), p. 555 (2d ed. 1993). Often they're equivalent, as when the plaintiff had overpaid the defendant by mistake and seeks to recover the overpayment. But not always. A defendant who takes something (and not because of an innocent mistake, either) that belongs to the plaintiff must give it back together with any profit from the unlawful appropriation even if that profit exceeded what the plaintiff would have earned had his property not been taken. *City of Milwaukee v. Knox*, 266 N.W. 911, 914 (Wis. 1936); *Warren v. Century Bankcorporation, Inc.*, 741 P.2d 846, 851-52 (Okla. 1987); *Restatement (Third) of Restitution & Unjust Enrichment* §§ 51(4), (5)(a), and comment f; and § 53 (2011); 1 Dobbs*, supra*, § 4.1(1), p. 554; Douglas Laycock, "The Scope and Significance of Restitution," 67 *Tex. L. Rev.* 1277, 1288-89 (1989). If someone steals your pregnant cow, you are entitled to get the cow back but also the calf even if the thief incurred expenses in assisting the birth of the calf and his assistance was essential to its survival.

Speaking of thieves, "suppose a thief takes the plaintiff's $10 watch and sells it for $20. The thief is liable for $20, as 'restitution.' One possible justification for this result

is that we think the thief's sale price is good evidence of the actual value of the watch, in which case $20 would represent *damages* for the plaintiff's loss. But even if the plaintiff concedes that the watch was only worth $10, he can recover the $20 as restitution . . . . The defendant is liable for the $20 because the . . . $20 is perceived as [including] a gain [$20 – $10] produced by the plaintiff's property. By identifying the $20 as a product of the plaintiff's property, we can think of it as a replacement or substitute for the property." 1 Dobbs, *supra*, § 4.1(1), p. 554 (emphasis in original). There isn't anything like that in this case. Latek didn't take something that belonged to the plaintiff. It merely rendered a service and the plaintiff paid without complaint the fee for which he was billed pursuant to their service contract.

If anyone would be entitled to restitution, it would be Latek if the contract were unenforceable because of the absence of a license; for Latek could then argue for being able to sue for *quantum meruit* ("what he deserves"), that is, to sue for the value of the service rendered (provided it was less than the agreed-upon fee), which is a form of restitution because designed to prevent unjust enrichment. See, e.g, *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1022-23 (7th Cir. 2002). Often *quantum meruit* is awarded even in cases in which the contract is unenforceable because illegal. *De La Vergne Refrigerating Machine Co. v. German Savings Institution*, 175 U.S. 40, 58 (1899); *Scheiber v. Dolby Laboratories, Inc.*, *supra*, 293 F.3d at 1022-23; *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986); *Zbichorski v. Thomas*, 103 N.W.2d 536, 537 (Wis. 1960).

But this may not be a good argument in a case governed by Wisconsin law; for a Wisconsin case which holds that a broker can't recover in *quantum meruit* for the value of his performance of a contract that fails to comply with the statute of frauds states that "there can be no recovery in the nature of commissions by real estate brokers or others upon quantum meruit for services rendered in buying or selling real estate." *Hale v. Kreisel*, 215 N.W. 227, 228 (Wis. 1927). The case is old, and deals with a sale of real estate rather than a sale of stock or of a business, but its language is broad and it has never been overruled. Another old case, also never overruled, *Hickey v. Sutton*, 210 N.W. 704, 704 (Wis. 1926), holds regarding an unlicensed architect that "the failure to procure a license bars recovery where the license is exacted as a police measure for the protection of the public," and adds that this rule "applies with equal force whether the requirement is sought upon contract or upon quantum meruit." An unlicensed architect sounds a good deal more dangerous than an unlicensed real estate broker, but if requiring a broker to be licensed is intended for the protection of the public—albeit not from the fall of a poorly designed building—rather than just for protecting brokers from competition, maybe *Hickey* bears on our case.

In response Latek needlessly complicates matters by arguing that the relief sought by the plaintiff—the return of his fee—is barred because he is *in pari delicto* with Latek. The plaintiff responds that he cannot be *in pari delicto* because he has committed no "delict"; the statute does

not forbid the hiring of an unlicensed broker, but only the broker's failure to have obtained a license.

The common law teaches that if the opposing parties in a lawsuit are equally in the wrong and as a result neither has a colorable claim against the other—more precisely, if awarding relief to the plaintiff would reward wrongdoing—courts will not adjudicate their dispute. The classic illustration is *Everet v. Williams* (Ex. 1725), better known as *The Highwayman's Case* and reported (long afterward) in a note by that name in 9 *L.Q. Rev.* 197 (1893). A highwayman sued his partner in crime for an accounting of the illegal profits of their criminal activity. The court refused to adjudicate the case, and both parties were hanged. A modern example would be a suit by the owner of a misleading trademark for infringement of the mark. The suit would be dismissed, although the parties would not be hanged. Both examples and another are discussed in *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985).

When as in such cases the plaintiff is asking for equitable relief, the *in pari delicto* defense is referred to as the unclean-hands defense. But the label doesn't matter, and the defenses were equated in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-61 (1995); see also *Byron v. Clay*, 867 F.2d 1049, 1052 (7th Cir. 1989); *Scheiber v. Dolby Laboratories, Inc.*, *supra*, 293 F.3d at 1022. The point is only that a court will not adjudicate a case if a judgment for the plaintiff would encourage or reward criminal or other unlawful activity—and by the same token it will not enforce a defense of *in pari delicto* if the

effect would be to encourage or reward a greater wrong. The second ground is the one on which the defense was rejected in *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 312-14 (1985), and *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 137-39 (1968) (plurality), the latter a case in which the plaintiff challenged, as a violation of antitrust law, restrictions on its competitive freedom, to which it had agreed in contracts with the defendant. The defendant pleaded *in pari delicto* as a defense to the plaintiff's suit for damages. The Court rejected the defense, holding that antitrust law, which would be disserved by enforcing the contracts, trumps contract law.

The law could easily do without an unclean-hands doctrine and an *in pari delicto* doctrine, since they reduce to the principle that a court will not entertain a claim or defense that would create a greater legal wrong than vindicating the claim or defense would avert. The principle cannot help Latek. The plaintiff can hardly be thought to have been equally at fault with Latek, if Latek violated (as we're assuming, though only for the sake of argument) the brokerage statute, while the plaintiff, so far as anyone is suggesting, violated nothing by contracting with Latek. The statute did not require the plaintiff—the broker's client—to get a license, or forbid it to deal with an unlicensed broker. And it's not as if by contracting with Latek the plaintiff harmed someone else. To punish the plaintiff would be the equivalent of deeming the victim of a theft an accomplice of the thief on the theory that without a victim there would have been no theft, and thus of barring the victim from

suing to recover what had been stolen from him. Cf. *Badger Coal & Coke Co. v. Sterling Midland Coal Co.*, 192 N.W. 461-62 (Wis. 1923).

But to bar relief for *this* plaintiff can hardly be thought a punishment for a victim of a violation. The plaintiff alleges no harm from the violation. He is seeking compensation for having spotted a violation of the statute and incurred legal expenses to punish the violator—a bounty-hunter or "private attorney general" theory of liability. There is no common law principle that someone who discovers a violation of law that caused him no harm can nevertheless sue the violator for the latter's profit from the violation. There are plenty of bounty-hunter statutes, see, e.g., 25 U.S.C. § 201 (violation of Indian protection laws); 31 U.S.C. § 3730(d) (False Claims Act); 47 U.S.C. § 80103 (removing wrecked property from Florida coast to foreign nations), and plenty of statutes that provide bounty-like relief in the form of statutory damages to which a plaintiff is entitled without proof of injury. See, e.g., 15 U.S.C. § 1640(a)(2)(A) (Truth in Lending Act); 15 U.S.C. § 1681n(a)(1)(A), (3) (Fair and Accurate Credit Transactions Act); 17 U.S.C. § 504(c) (copyright infringement); 18 U.S.C. § 2710(c)(2)(A) (wrongful disclosure of video tape rental or sale records); 29 U.S.C. § 1854(c)(1) (Migrant and Seasonal Agricultural Worker Protection Act); 47 U.S.C. § 227(b)(3) (Telephone Consumer Protection Act) (unsolicited text messages or fax advertisements). But no Wisconsin statute authorizes the bounty that the plaintiff is seeking.

So his only hope is to show that the brokerage statute creates an implied right to seek such a bounty. Under

Wisconsin law as under federal law, implied rights of action to enforce statutes that do not specify a monetary remedy are occasionally recognized. *Green v. Jones*, 128 N.W.2d 1, 5 (Wis. 1964). But again as in federal law, e.g., *Mallett v. Wisconsin Division of Vocational Rehabilitation*, 130 F.3d 1245, 1249 (7th Cir. 1997), the presumption is against them. See *McNeill v. Jacobson*, 198 N.W.2d 611, 614 (Wis. 1972); *Miller Aviation v. Milwaukee County Board of Supervisors*, 273 F.3d 722, 728-29 (7th Cir. 2001) (Wisconsin law). We've never heard of an implied right to restitution of a violator's profit that was not a consequence of an injury of some sort to the plaintiff. If a state creates a right of action, restitution—the conditions for which, we emphasize, are not satisfied in this case—is a permissible remedy. But what the plaintiff is seeking in this case is not restitution.

All other objections to one side, so novel an implied right of action as the plaintiff asserts cannot be defended as necessary to promote compliance with the brokerage statute. The "Real Estate Practice" act, as it is still called despite its having been broadened beyond real estate, provides misdemeanor criminal remedies for violating the statute, § 452.17, and, more important, forbids a violator to sue (perhaps including for *quantum meruit*) to collect any compensation for his brokerage services. § 452.20. So had the plaintiff not paid Latek's fee, Latek could not have sued him for it (always assuming that the statute was violated). The fact that an unlicensed broker cannot sue for his fee is a significant deterrent to violating the brokerage law, and combined with the criminal sanctions should provide adequate deterrence,

without need to add the sanction that the plaintiff advocates. In a case decided after the oral argument in the present appeal, Wisconsin's intermediate appellate court held, consistent with this point, that "the only consequences for violating Wis. Stat. § 452.03 by acting as a real-estate broker in Wisconsin without a license are: (1) the violator may not sue in a Wisconsin court for a brokerage commission; and (2) the violator may be subject to criminal penalties . . . . Protection of Wisconsin residents from unlicensed real-estate brokers is, as the legislature determined, sufficiently enforced by denying those brokers the right to sue for their commissions in Wisconsin courts and by subjecting them to potential criminal penalties." *Hernandez v. BNG Management Limited Partnership*, No. 2011AP362, 2012 WL 1499826 (Wis. App. May 1, 2012).

For the sake of completeness, we address Latek's argument that the suit fails for still another reason: the "voluntary payment" doctrine, recognized in Wisconsin as in other states. If you pay a bill voluntarily—that is, on demand, rather than after being sued or threatened with suit—you can't later sue to recover what you paid, on the basis of facts known to you (or that you should have known) when you paid. *Putnam v. Time Warner Cable*, 649 N.W.2d 626, 631-37 (Wis. 2002); *Butcher v. Ameritech Corp.*, 727 N.W.2d 546, 552-56 (Wis. App. 2006); *Anthony v. American General Financial Services, Inc.*, 697 S.E.2d 166, 175 (Ga. 2010); *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 726 (Mo. 2009); *King v. First Capital Financial Services Corp.*, 828 N.E.2d 1155, 1171 (Ill. 2005). The reason is to reduce uncertainty in commercial transac-

tions; the recipient of the voluntary payment doesn't have to create a reserve against the possibility of having to return the payment. The plaintiff argues that he didn't know that Latek had no license. If instead he were arguing that he didn't know that Latek *needed* to have a license, that would be a mistake of law; and mistake of law is not a defense to the voluntary-payment rule, *Putnam v. Time Warner Cable, supra*, 649 N.W.2d at 632; *Butcher v. Ameritech Corp., supra*, 727 N.W.2d at 555; *Stone v. Mellon Mortgage Co.*, 771 So.2d 451, 458 (Ala. 2000), because the law is equally accessible to both parties to the transaction. A mistake of fact is different; its absence is a precondition to the application of the doctrine, as the statements of the doctrine in the cases we've cited make clear.

So the voluntary-payment doctrine is inapplicable, and the *in pari delicto* doctrine unhelpful, but nevertheless Latek wins.

It remains to say just a word about the joinder of Mr. Latek as a defendant. He should not have been joined, for when, as in this case, "an agent merely contracts on behalf of a disclosed principal, the agent does not become personally liable to the other contracting party." *Benjamin Plumbing, Inc. v. Barnes*, 470 N.W.2d 888, 893 (Wis. 1991).

The judgment of dismissal is

AFFIRMED.